**COSTAIN COAL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Nos. 93–57T, 93–61T.**

United States Court of Federal Claims.

July 1, 1996.

Douglas P. Romaine, Lexington, Kentucky, with whom was Spencer D. Noe, for plaintiff.

W.C. Rapp, Washington, D.C., with whom were Assistant Attorney General Loretta C. Argrett, and Mildred L. Seidman, Chief, Court of Federal Claims Section, for defendant. Terry T. Coles, of counsel.

## OPINION

LYDON, Senior Judge:

These consolidated federal income tax refund cases are before the court on the parties' cross-motions for summary judgment. At issue is the proper method of calculating the amount of tax due pursuant to Internal Revenue Code (I.R.C.) § 4121. Upon consideration of the record and of the parties' representations made during oral argument, this court finds that no genuine issue of material fact exists and that defendant is entitled to judgment as a matter of law.

## FACTS

The parties have stipulated to all material facts and figures. In 1977, Congress enacted the Black Lung Benefits Revenue Act (the Act) which added to the Internal Revenue Code section 4121 and provided for the imposition of an excise tax on the sale of coal. H.R. 5322, 95th Cong., 2nd Sess. § 2(a) (1978). Pursuant to the Act, amounts equal to the revenues collected from coal excise taxes are appropriated to the Black Lung Disability Trust Fund from which certain black lung disability benefits are withdrawn in those cases where no coal mine operator is found specifically responsible for an individual miner's disability.

Plaintiff, Costain Coal, Inc., is the successor in interest to Pyro Mining Company, formerly an Illinois general partnership, and to Pyro Alcoa Coal Company, formerly a Kentucky general partnership, both of which filed claims with the Internal Revenue Service (IRS) for refund of federal excise taxes allegedly erroneously collected. The IRS de-nied these claims and plaintiff thereafter filed suit in this court. Plaintiff seeks a refund of federal excise taxes imposed by I.R.C. § 4121 on the sale of coal for the taxable quarters October 1, 1985 through December 31, 1988 in the amounts of $27,-340.82 (No. 93–61) and $388,548.07 (No. 93–57).

I.R.C. § 4121 provides in part:

(a) **Tax imposed.**—

(1) **In general.**—There is hereby imposed on coal from mines located in the United States sold by the producer, a tax equal to the rate per ton determined under subsection (b).

(2) **Limitation on tax.**—The amount of the tax imposed by paragraph (1) with respect to a ton of coal shall not exceed the applicable percentage (determined under subsection (b)) of the price at which such ton of coal is sold by the producer.

(b) **Determination of rates and limitations on tax.**—For purposes of subsection (a)—

(1) the rate of tax on coal from underground mines shall be $1.10,

(2) the rate of tax on coal from surface mines shall be $.55, and

(3) the applicable percentage shall be 4.4 percent.

During the period in issue, plaintiff was a "producer" within the meaning of section 4121 and was subject to the excise tax on the sale of coal by producers.

I.R.C. § 4121(a)(1) imposes an excise tax on the sale of all coal produced from underground mines in the United States at a rate of $1.10 per ton. Section 4121(a)(2), however, limits the per-ton tax to 4.4 percent of the price at which a ton of coal is sold by the producer. The purpose of this *ad valorem* limitation is to prevent the tax imposed by this section from being a disproportionately high percentage burden on lower-priced coal. *See* H.R. No. 95–438, 95th Cong., 2d Sess. 1 (1978), *reprinted in* 1978 U.S.C.C.A.N. 72, 73 (explanatory statement of Russell B. Long, Chairman of the Senate Committee on Finance). Thus, coal from underground mines that sells for less than $25.00 per ton is taxed at a rate of 4.4 percent *ad valorem* instead of

the flat rate of $1.10 per ton (4.4 percent of $25 equals $1.10). All of the coal at issue in these cases came from underground mines and was sold for less than $25 per ton.

Coal lying in an undisturbed state contains inherent or bed moisture. Inherent or bed moisture is the total natural compliment of moisture, both free and chemically combined, present in coal in its natural, undisturbed state. "Excess moisture" is moisture in excess of inherent moisture. Excess moisture increases the weight of coal but not its value. The parties do not dispute the amount of excess moisture present in the coal at issue here.

Plaintiff's contracts with its customers provided that plaintiff deliver coal that had both a specified Btu (British Thermal Unit) content,[1] and which did not contain specified levels of moisture, ash and sulphur. If plaintiff delivered coal that satisfied these contract specifications, its customers were required to pay a fixed price per ton. If the coal delivered did not meet these contract specifications, the customers could either reject the delivery or reduce the price paid per ton according to a fixed schedule.

The term "coal" as used in section 4121 is not defined by the statute. In *A.J. Taft Coal Co. v. United States,* 605 F.Supp. 366 (N.D.Ala.1984), *aff'd without opinion,* 760 F.2d 280 (11th Cir.1985) (*Taft I* ), the court defined "coal" for the purpose of calculating the amount of excise taxes due, as follows:

> In the absence of clear Congressional intent and in the further absence of clear regulatory language, the court concludes that "coal" as used in the statute and the regulation does not include water which is excess to its inherent moisture content and which is reasonably measurable.

*Id.* at 372. In light of the holding in *Taft I,* the IRS published Rev.Rul. 86–96, 1986–2 C.B. 181, in which the IRS concluded:

> For purposes of the tax imposed by section 4121 of the Code, the Internal Revenue Service will follow the *Taft Coal Co.* decision regarding the moisture content of

coal. The Service will allow a calculated reduction of taxable weight for the weight of excess moisture, but only where the taxpayer can demonstrate through competent evidence that there is a reasonable basis for its determination of the existence, and amount, of excess moisture.

The parties disagree as to the correct method of computing the amount of excise tax due on coal that is sold for less than $25 per ton. Their respective positions are set forth below. For illustrative purposes, the parties posture that a producer of underground coal sells 100 tons of "product" for a stated contract price of $20 per ton, and that the "product" sold is 95 percent coal and 5 percent excess moisture.

*Plaintiff's Calculation.* Applying the definition of "coal" used in the *Taft Coal* decision, only 95 tons (95% of the 100 tons of material sold) is "coal" sold for a total price of $2,000. Since the purchaser is purchasing products consisting in this case of water which is exempt from tax and coal which is taxable at a stated price based on tonnage, the purchase price must be allocated proportionately resulting in a price per ton of ($2,000 × 95% divided by 95 tons). Pursuant to §§ 4121(a)(1) and (b)(1), for coal from underground mines, the tax is imposed at a rate is [sic] $1.10 per ton. However, §§ 4121(a)(2) and (b)(3) provide a limitation on the rate of tax imposed. *The rate may not exceed 4.4% of the price at which the ton of coal is sold by the producer. Thus, the rate per ton may not exceed 4.4% of $20.00, or $0.88 per ton.* Since the limitation applies, the tax is imposed at the rate of $0.88 for 95 tons of "coal" or $83.60. (emphasis added)

*Defendant's Calculation.* Applying the definition of "coal" used in the *Taft Coal* decision, only 95 tons (95% of the 100 tons of material sold) is taxable coal sold for a total price of $2,000. The other 5 tons of material is excess moisture that is not "coal" and is therefore not subject to the tax. Since $2,000 has been paid for 95 tons of taxable coal, the effective price is

---

1. The Btu content of coal is a measure of the amount of energy the coal will produce when burned. One Btu is the quantity of heat required to raise the temperature of one pound of water one degree Fahrenheit. The sales price of coal is determined, in part, by its Btu content.

$21.05 per ton of taxable coal. Pursuant to §§ 4121(a)(1) and (b)(1), for coal from underground mines, the tax is imposed at a rate of $1.10 per ton. However, §§ 4121(a)(2) and (b)(3) provide a limitation on the rate of tax imposed. *The rate may not exceed 4.4% of the price at which the ton of coal is sold by the producer. Thus, the rate per ton may not exceed 4.4% of $21.05 or $0.93 per ton.* Since the limitation applies, the tax imposed on this sale is limited to the rate of $0.93 for 95 tons of taxable coal, or $88.35. (emphasis added)

The parties' positions reflect a difference in interpretation of the meaning of the phrase "the price at which such ton of coal is sold by the producer." I.R.C. § 4121(a)(2).

### DISCUSSION

It is well settled that in a tax refund suit there is a strong, but rebuttable, presumption of the correctness of the determinations of the Commissioner. *See, e.g., Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). This presumption applies to the accounting method the Commissioner chooses to implement. *See Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 532–33, 99 S.Ct. 773, 781, 58 L.Ed.2d 785 (1979). The Commissioner's understanding of a statute, unless unreasonable, is virtually conclusive. When a statute is silent or ambiguous with respect to a specific issue, the court must determine whether the Commissioner's interpretation is based on a permissible construction of the statute. The Commissioner's construction need not be the only one the Commissioner could have adopted or the construction the court would have adopted; the Commissioner's construction of the statute need only be reasonable. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). Thus, a taxpayer must come forward with enough evidence to support a finding contrary to the Commissioner's determination. *Danville Plywood Corp. v. United States,* 899 F.2d 3, 7 (Fed.Cir. 1990).

Plaintiff contends that the Commissioner's method of computing the excise tax herein is erroneous for the following reasons: (1) the language of the statute does not support defendant's position; (2) recomputing the purchase price to that of an effective price unnecessarily recharacterizes the economic agreement of the producer and its customer; (3) defendant's position would lead to an administratively burdensome result in contravention of the generally accepted understanding of the application of the statute; and (4) the effect of defendant's position is to impose an excise tax upon an article which is clearly not intended to be taxed.

Defendant responds that the Commissioner's method is correct because no amount of the sales price for taxable coal may be allocated as an amount paid by the purchaser for excess moisture present in the coal. The Commissioner's method is predicated on the assumption that the tax is imposed on coal, not on water. Thus, 100 tons of coal accompanied by 5 tons of excess water is not the same, and should not be taxed as if it were the same, as 105 tons of coal with no excess moisture. Therefore, defendant argues, plaintiff's method of calculating the excise tax is flawed because it assumes that the purchaser paid for the excess water. By imputing a value to the excess water, plaintiff's method does not base the tax solely on the sale of coal but also on the sale of excess water.

The starting point in every case involving construction of a statute is the language itself. *Commissioner v. Engle,* 464 U.S. 206, 214, 104 S.Ct. 597, 602–03, 78 L.Ed.2d 420 (1984). Section 4121 clearly imposes a tax on "coal." As used in section 4121 "coal," as the *Taft I* court determined and as the parties so stipulate, does not include excess moisture. Nonetheless, plaintiff argues that, when given its plain and ordinary meaning, the phrase "the price at which such ton of coal is sold" in section 4121(a)(2) refers to the stated contract price of a ton of coal containing an acceptable percentage of excess moisture. Plaintiff asserts that it negotiates to sell a "product" for a price based upon tonnage and that the product consists of both a taxable component

(coal) and a nontaxable component (excess moisture). As a result, plaintiff contends, its tax liability should be decreased according to the weight of the excess moisture present in the product to avoid the taxation of the excess moisture.

Plaintiff's characterization of the economic agreement of the producer and its customer is implausible. Under plaintiff's method, the producer in the example given above sells 95 tons of coal for $20 per ton and 5 tons of excess moisture for $20 per ton and thus, coal and water are equal in value to the purchaser. It is apparent, then, that the "product's" stated sales price per ton does not accurately reflect the sales price per ton of "coal" within the meaning of section 4121. Plaintiff's method is inconsistent with the plain language of the statute because it uses the "product's" sales price per ton instead of "coal's" sales price per ton. Plaintiff's substitution of "product" for "coal" is contrary to the canon of statutory construction that cautions the court to adopt a consistent interpretation of a term used in more than one place within a statute. *See United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 512 n. 5, 112 S.Ct. 2102, 2107 n. 5, 119 L.Ed.2d 308 (1992).

Although excess moisture may be present in coal, it is clear that a customer pays only for the coal and not for the excess moisture. In *A.J. Taft Coal, Inc. v. Connors*, 906 F.2d 539 (11th Cir.1990) (*Taft II*), the court of appeals held that "coal," as used in a national collective bargaining agreement, did not include excess moisture for purposes of calculating the producers' contributions to multi-employer health and retirement funds based on coal tonnage. The court reasoned:

> "Coal" means "coal" and it is not an ambiguous term.... [The producer] was never paid for excess water contained in the coal it sold to its customer, Alabama Power, because Alabama Power paid only for the coal it purchased, reducing the price it paid to account for the water. Conse-

quently, Alabama Power did not purchase a "coal product" consisting of coal and excess moisture; it purchased coal alone. [The producer] threw in the water for free.

*Id.* at 544. Likewise, there is no evidence in this case that any of the purchasers of plaintiff's coal paid a specific price per ton for excess moisture. Plaintiff's characterization of the sales price per ton as a price negotiated for a "product" consisting of coal and water is misleading to the extent that it implies that purchasers pay for excess water. But, as the district court in *Taft I* recognized:

> Water has no BTU value. Accordingly, although it is always expected to be present in some quantity with coal delivered, a producer operating pursuant to a BTU contract does not profit financially by shipping water with coal. Water added to coal increases the apparent tonnage, but decreases the number of BTU's per ton.

*Taft I*, 605 F.Supp. at 369. Thus, contrary to the implication of plaintiff's characterization of its economic agreement with its customers, excess moisture was not a profitable product for plaintiff.

As to plaintiff's argument that defendant's method of calculating the excise tax imposes an administrative burden on producers, the court finds no merit to this claim. The basis of plaintiff's argument appears to be that the Commissioner's method allegedly requires one more calculation than plaintiff's. As noted above, however, the statute imposes a tax on "coal," not on a "product," and therefore, plaintiff must determine the actual price per ton of "coal." Plaintiff's method, as discussed above, does not do this, and thus is unreasonable. Further, plaintiff's method is somewhat convoluted and misleading.[2] The method of determining the amount of excise tax due in "Defendant's Calculation" is simple and straight forward. More importantly, defendant's method reflects clearly that the tax is on coal alone and not on coal and

---

**2.** In "Plaintiff's Calculation" set forth above, 100 tons of product containing coal and excess moisture is sold for $2,000, which results in a price of $20 per ton for both the coal and excess moisture. Plaintiff thereafter allocates the purchase price to ostensibly remove the excess water from

the coal by means of the following computation: the product of $2,000 and 95 percent divided by 95 tons. This computation results in $20 per ton for purposes of determining the excise tax which is precisely the cost per ton for coal and excess moisture set forth above.

water. In any event, to the extent that the additional computation required by defendant's method could be considered a burden, it would be a simple process in defendant's calculation, but a dubious and confusing one in plaintiff's calculation. Moreover, defendant's method furthers the congressional objective of section 4121, i.e., to collect revenue for the Black Lung Disability Trust Fund, and is otherwise reasonable.

In sum, all of plaintiff's arguments suffer from the same defect—each is based on the erroneous premise that a portion of the sales price of coal can be allocated to the excess moisture present in the coal. This premise is contrary to case law and industry practice,[3] and is inconsistent with the established definition of "coal" for purposes of section 4121. Finally, plaintiff's method is unreasonable because it disregards the presence of excess water when computing the amount paid for each ton of taxable coal, but then considers it when determining the total number of tons of taxable coal sold. Plaintiff has failed to meet its burden of overcoming the presumption that the Commissioner's determination is correct. Because the Commissioner's method of calculating the amount of excise tax due is reasonable, plaintiff is bound by that determination. *See Chevron U.S.A., Inc., supra.*

## CONCLUSION

For the reasons set forth above, the court finds defendant's method of calculating the amount of excise tax due pursuant to I.R.C. § 4121 to be reasonable. Therefore, plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted. Accordingly, the Clerk is directed to dismiss the complaints. No costs.

3. Neither party relies on *Amax Coal Co. v. United States,* 932 F.Supp. 226 (S.D.Ind.1996), which plaintiff submitted to the court prior to oral argument. Although the issue in *Amax* is the same as the instant issue, the district court therein denied the parties' cross-motions for partial summary judgment on the ground that genuine issues of material fact existed regarding whether the coal producers and purchasers considered excess moisture when negotiating and agreeing on a base price per ton for the coal. In this case, the court need not make that factual determination. Assuming, *arguendo,* that plaintiff was able to sell excess moisture for profit, plaintiff's method of apportioning the sales price per ton of its "product" (as illustrated in "Plaintiff's Calculation" above) between "coal" and excess moisture is unreasonable. There is no evidence in this case supporting a finding that one ton of excess moisture is equal in value to one ton of "coal." Indeed, the district court in *Amax* noted that "coal" does not include excess moisture and that excess moisture negatively affects the Btu of coal. *Id.* at 229, 230.