### UNITED STATES of America

### v.

### CYPRUS AMAX MINERALS COMPANY.

No. 5–92–CV–290(WWE).

United States District Court, D. Connecticut.

March 31, 1997.

---

Rule 4 had been amended in 1993. It is Rule 4(d) that governs the service attempted by the plaintiff in November of 1994.

Deborah S. Meland, U.S. Dept. of Justice/Tax Division, Washington, DC, for U.S.

Ice, Miller, Donadio & Ryan by Mark J. Richards, G. Daniel Kelley, Jr., Donald G. Sutherland (appearing pro hac vice), Indianapolis, IN, for defendant.

Robinson & Cole by Joseph L. Clasen, Stamford, CT, for defendant.

### RULING ON RENEWED CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff, United States of America, brought this action pursuant to 26 U.S.C. § 7405 against defendant, Cyprus Amax Minerals Company, to recover excise tax refunds paid on underground and surface coal sold from defendant's Indiana, Illinois, Utah and Wyoming mines during the years 1983 through 1985.

The parties cross-moved for partial summary judgment with respect to the excise tax paid during the years 1983 through 1985 on surface coal mined at defendant's Belle Ayr and Eagle Butte, Wyoming, mines. In a ruling dated March 30, 1995, this court denied both parties' motions for partial summary judgment based on an ambiguity in the record as to how the original tax paid by the defendant was calculated. After additional discovery, the parties have filed renewed cross-motions for partial summary judgment. For the reasons set forth below, plaintiff's motion will be granted and defendant's motion will be denied.

### BACKGROUND

The relevant facts are as follows. At the time the complaint was filed, Amax Inc. maintained its principal office in Greenwich, Connecticut. Cyprus Amax Minerals Company is the successor in interest to Amax Inc. Defendant operates several coal mines including the Belle Ayr and Eagle Butte, Wyoming mines, the two at issue here. During the relevant time period, the coal mined from these mines was surface coal which sold for less than $12.50 per ton. Coal in its natural state contains inherent moisture. Once mined, it acquires additional moisture, commonly referred to as excess moisture, through processing and exposure to the elements.

Defendant sold the coal to various utility companies in accordance with long-term supply contracts. The contracts set forth the base price payable per ton for the coal, a specified British thermal unit ("Btu") level and allowable parameters for moisture, ash, volatile matter, fixed carbon and sulfur. The contracts also provide that the price is based upon coal having a specific Btu level on an "as received" basis. If the Btu level per pound of the delivered coal varied by 100 Btu above or below the base line Btu content set forth in the contract, the price would be adjusted each month to compensate for those variations.

Title 26 U.S.C. § 4121 imposes an excise tax on the sale of domestically produced coal. This tax, commonly known as the Black Lung Excise Tax ("BLET"), funds the Black Lung Disability Trust Fund which provides benefits for coal mine workers disabled by pneumoconiosis ("Black Lung" disease) and their surviving spouses. Defendant filed Forms 720 and paid the BLET for the quarters ending March 31, 1983, through December 31, 1985. Defendant argues that it based

the amounts of the BLET on the total weight and sales price of the "coal product" sold, including excess moisture.

Between January 1985 and April 1986 defendant filed claims for refunds for overpayment of the BLET paid for the quarters in issue based on its calculated overstatement of the weight and sales price of the coal due to the inclusion of excess moisture. In May 1990, the IRS issued refunds in the aggregate amounts of $754,883.08 in tax and $562,737.56 in interest. Approximately two years later, the government brought this action seeking return of those refunds.

Defendant seeks partial summary judgment limited to the threshold legal question of whether it is entitled to claim a deduction for excess moisture associated with coal selling for less than $12.50. Plaintiff moves for partial summary judgment arguing that as a matter of law defendant is not entitled to such a deduction.

### DISCUSSION

█ Title 26 U.S.C. § 7405 authorizes an action by the government to recover erroneously issued tax refunds. An action to recover a tax refund is essentially an action for restitution where the government bears the burden of demonstrating that the taxpayer has money "it ought not to retain." *United States v. Russell Mfg. Co.*, 349 F.2d 13, 15 (2d Cir.1965). "At the root of the notion of restitution in equity is the principle that no person should be allowed to unjustly retain a benefit conferred by another at the other's expense; in short, that no person should be unjustly enriched." Generally, the recipient of a tax refund issued erroneously by the government will be unjustly enriched at the tax payers' expense. If the government demonstrates that the refund was erroneously issued, it is entitled to recover the refunded amounts with interest. *United States v. Bell*, 818 F.Supp. 444, 449 (D.Mass.1993).

Section 4121 in effect for the pertinent tax periods provided in relevant part:

(a) Tax imposed.—There is hereby imposed on coal sold by the producer a tax at the rate of—

(1) ($1.00) per ton in the case of coal from underground mines located in the United States, and

(2) [$.50] per ton in the case of coal from surface mines located in the United States.

(b) Limitation of Tax—The amount of the tax imposed by subsection (a) with respect to a ton of coal shall not exceed [4%] of the price at which such ton of coal is sold by the producer.

Subsection (a) of § 4121 imposes a tax based on the weight of the coal. Subsection (b) limits the tax based on the sales price of the coal. "This [4]-percent *ad valorem* limitation is intended to prevent the tax imposed by this section from being a disproportionately high percentage burden on lower-priced coal." H.R. Rep. 95–438 *rep'd* in 1978 U.S.C.C.A.N. 72, 73. Under this formula, coal from surface mines is taxed at 4% of the sales price until the sales price exceeds $12.50 per ton; over $12.50 per ton the coal is taxed at a rate of $.50 per ton. Given the subject coal sold for less than $12.50, the 4% limitation applies.

Section 4121 does not define the term "coal." The court in *A.J. Taft Coal Co. v. United States*, 605 F.Supp. 366, 372 (N.D.Ala.1984), *aff'd without opinion*, 760 F.2d 280 (11th Cir.1985) held: "In the absence of clear Congressional intent and in further absence of clear regulatory language . . . coal as used in [S 4121] and the regulation does not include water which is excess to its inherent moisture content and which is reasonably measurable."

In response to the holding in *Taft*, the IRS promulgated Revenue Ruling 86–96 which provided for "a calculated reduction of the taxable weight of coal for the weight of excess moisture, but only where the taxpayer can demonstrate through competent evidence that there is a reasonable basis for its determination of the existence, and amount of excess moisture." At issue in this motion is whether under the 4% limitation, a tax based on the price of the coal, defendant is entitled to claim a deduction for the excess moisture associated with the coal.

Defendant contends that each of the contracts specified a sales price based on the

weight of the entire "coal product" as delivered to the customers. To the extent there was excess moisture in the coal product sold, it was encompassed by the ton and price per ton contract provisions. The presence of excess moisture in the product increased the weight of the product and, under the terms of the contracts, proportionately increased the amount paid by the purchaser to defendant based on the sales price "per ton" specified in the contracts. Defendant avers that it correctly allocated a portion of the weight and sales price to the excess moisture in the coal delivered.

The government argues that no portion of the weight of the coal should be allocated to excess moisture because the limitation tax in § 4121 applies to price, not weight. Moreover, even if some type of allocation between the coal and excess moisture were proper, the government contends that such an allocation should be in proportion to any part of the price attributed to the excess moisture. The government continues that in this case no portion of the price should be allocated to the excess moisture because the customer does not pay for excess moisture.

The parties' positions of the proper methodologies for calculating the tax are outlined by the following example assuming that there is a 10,000 ton shipment of surface coal containing 1% excess moisture and selling for $10.00 per ton.

Defendant: Defendant claims that the tax is equal to 4% of the purchase price per ton of coal product ($10.00 × 4%) which is $.40, multiplied by the number of tons of coal excluding the weight of the excess moisture (10,000 × 1%), 9,990 tons, which produces a tax of $3,960. Under an alternative methodology, defendant argues that based on the total sales price of the shipment ($100,000) multiplied by the percentage tons of coal without excess moisture (99%), the total sales price subject to the tax is $99,000. That multiplied by the 4% limitation ($.40), still produces a tax of $3,960.

Government: The government claims that the tax owed on this shipment is 4% of the total sale price for the entire shipment ($100,000), which is $4,000 because the customer is not paying for excess moisture.

The government contends, in the alternative, that since no portion of the purchase price is allocable to excess moisture, the effective or actual price of 9,990 tons of "coal" is $10.101 per ton. The tax on this shipment of 9,900 tons of coal is calculated as 4% of the total sale price for the shipment ($10.101 x 9,900 = $100,000), which is $4,000.

Since the court's ruling denying the parties' motions for summary judgment, the courts in *Costain Coal, Inc. v. United States,* 36 Fed.Cl. 38 (1996) and *Amax Coal Company v. United States of America,* 959 F.Supp. 990 (S.D.Ind.1996) have addressed the precise issue presented here.

*Costain* involved a coal producer seeking a refund from the IRS for the BLET taxes it contended it paid for excess moisture on coal from underground mines subject to the limitation tax. The parties stipulated and the court agreed that the limitation tax does not tax excess moisture but only coal. The supply contracts at issue in that case required a deadband Btu level as well as specified levels of moisture, ash and sulphur which the coal could not contain. The coal was paid on a fixed price per ton.

Plaintiff coal producer argued, as Cyprus Amax argues in this case, that under the terms of the supply contracts it sold a "coal product" containing coal and excess moisture. As such, the tax should be reduced in relation to the weight of the excess moisture present in the coal. The court found this theory implausible because the plaintiff's substitution of the "product" sales price per ton for the "coal" sales price per ton was inconsistent with the requirements of the statute. The court agreed with the government's simple and straightforward calculation for determining the BLET based on an application of the effective or actual price of the coal sold, after reducing the weight by the excess moisture. *Costain,* 36 Fed.Cl. at 41–42. This calculation was the same as the government's effective price calculation submitted in this case.

The court also found that the evidence failed to demonstrate that any customer paid a specific price per ton for excess moisture

and that the delivery of excess moisture was not profitable for the plaintiff. *See A.J. Taft Coal, Inc. v. Connors,* 906 F.2d 539, 544 (11th Cir.1990) (where the court found that the utility company pays the coal producer for coal, not a coal product); *See also, A.J. Taft Coal Co. v. United States,* 605 F.Supp. at 369 ("[A]lthough it is always expected to be present in some quantity with coal delivered, a producer operating pursuant to a Btu contract does not profit financially by shipping water with coal.").

The tax refund suit in *Amax Coal* involved the same parties as in this case but different tax years. Amax argued, as it does here, that the excess moisture has value under the contracts because the price is based on tonnage. The court, agreeing with the court in *Costain,* found "that it would strain logic to assume that purchasers actually want excess moisture in their coal where contracts invariably set maximum levels of moisture but never minimum levels. Excess moisture in coal is an unavoidable and accepted reality within the industry." The court held that the limitation tax must be applied to the effective or actual price of the coal sold. *Amax Coal,* 959 F.Supp. at 996–997.

This court agrees with the courts in *Costain* and *Amax Coal* that the term "coal" as referred to in the limitation tax does not include excess moisture. To find otherwise would give the term "coal" inconsistent meanings throughout the statute in direct conflict with the rules of statutory construction. *Reves v. Ernst & Young,* 507 U.S. 170, 177, 113 S.Ct. 1163, 1169, 122 L.Ed.2d 525 (1993) (where a word is used twice in a statute, it is reasonable to give each use a similar construction). Moreover, construction of the term "coal" to exclude excess moisture conforms with the "provisions of the whole law, as well as its object and policy." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995). The BLET is a tax on coal, the known cause of Black Lung disease, not excess moisture.

Having found that the limitation tax is based on the price per ton of coal, the next step is to determine the price for purposes of calculating the tax. Taking the price for the coal sold, the price determination turns on whether any portion of the sales price per ton is allocable to the excess moisture in the coal. Like *Costain* and *Amax,* the court finds that a price allocation is improper. Defendant's customers paid for coal, not a coal product with excess moisture. The contracts are deadband contracts, requiring a price per ton based on the coal having a certain Btu and giving price adjustments based upon a 100 Btu deviation from the standard. The contracts also provided for maximum levels of excess moisture, not minimum levels. While defendant has proffered the deposition of William Hartzler, defendant's Tax Manager, which states that excess moisture has value to the utility companies because their boilers are set to operate with coal containing certain levels of excess moisture, there is no evidence that these companies paid any specified price for the excess moisture.

Also, defendant's methodologies incorrectly assume that a portion of the sales price is allocated to the excess moisture or that the coal and excess moisture are of equal value. The proper method of determining the BLET is to apply to the 4% limitation to the effective or actual price of the coal after reducing the tonnage due to the excess moisture. Accordingly, the court finds that the BLET refunds for the Belle Ayr and Eagle Butte mines for the quarters ending March 31, 1983 through December 31, 1985 were erroneously issued and that the government is entitled to recover the amounts refunded together with interest.

### *CONCLUSION*

For the foregoing reasons, plaintiff's motion for partial summary judgment [# 59] is GRANTED and defendant's motion for partial summary judgment [# 52] is DENIED.