**UNITED STATES of America, Plaintiff,**

v.

**Angus N. MacPHAIL, et al., Defendant.**

No. C2–00–621.

United States District Court, S.D. Ohio, Eastern Division.

Feb. 25, 2004.

Michael W. Davis, U.S. Department of Justice, Washington, DC, for Plaintiff.

Michael John Johrendt, Johrendt Cook & Eberhart, Harvey Dunn, James Edward Davidson, Schottenstein Zox & Dunn, Columbus, OH, for Defendant.

## MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

Plaintiff United States of America asserts a cause of action under 26 U.S.C. § 7405(b) seeking recovery from Defendant Angus MacPhail of an income tax overpayment refund. This matter is currently before the Court on Plaintiff's Motion for Summary Judgment on this claim against Defendant MacPhail. (Docket No. 45). For the reasons below, the Court hereby grants Plaintiff's motion for summary judgment against Defendant Mac-Phail.

## I. Background

Initially, Plaintiff asserted claims against both Defendant MacPhail and Sarah Crane for recovery of an erroneous refund or credit respectively, but this Court entered Judgment in Ms. Crane's favor on June 2, 2003 when it granted her motion for summary judgment on Plaintiff's claim against her for an erroneous credit and Defendant MacPhail's cross-claim against her for indemnity.[1] Therefore, only Plaintiff's claim against Defendant MacPhail for an erroneous refund remains. The factual background of this case was set forth in detail in this Court's Memorandum and Order of June 2, 2003. (Record at 41). The facts in the record have not changed since that order, therefore the Court incorporates below many of those same facts in examining the current motion.

Defendant MacPhail and Ms. Crane signed a Separation Agreement on April 9, 1997 that required them to file a joint tax return with the Internal Revenue Service ("IRS") for the year 1996. On April 15, 1997, an IRS Form 4868 was filed requesting an extension of time to file their 1996 joint tax return. With the request for extension was a check for $490,000.00

drawn on the Crane family partnership, Stanbery, Ltd. On July 1, 1997, Ms. Crane and Defendant MacPhail's marriage was terminated. Subsequently, on October 15, 1997, they filed their joint tax return for the year 1996. Although Defendant Mac-Phail and Ms. Crane owed $190,464.00 at the close of the 1996 tax year, the Stanbery payment of $490,000.00 on April 15, 1997 left them with an overpayment in the amount of $300,427.00 on their 1996 return. The IRS reduced this amount by $891.00, leaving a net overpayment of $299,536.00, which the parties elected to be applied to the estimated tax liability for the following tax year, as had been their practice during their years of marriage.

For the 1997 tax year, Defendant Mac-Phail filed his individual return, which reflected taxable income of $10,675.00 and a corresponding tax liability of $1,275.00. Although Defendant MacPhail did not claim the overpayment of $299,536.00, the IRS applied this overpayment to his 1997 return and correspondingly issued a refund check in the amount of $299,536.00 on June 8, 1998. Subsequently, Ms. Crane filed her individual 1997 tax return and claimed credit for the entire carried-over 1996 overpayment of $299,536.00. Although initially the IRS refused to give Ms. Crane credit for the 1996 overpayment, it eventually did credit her the entire amount of the overpayment. The IRS subsequently demanded that Defendant MacPhail return the amount refunded on June 8, 1998 that was based on the 1996 overpayment of $299,536.00, but Defendant MacPhail refused to do so. Consequently, the IRS had both refunded the $299,536.00 to Defendant MacPhail and credited the $299,536.00 to Ms. Crane. As a result, the IRS initiated the current action to recoup this double payment, of which only the

---

1. The Court denied as moot Ms. Crane's      cross-claim against Defendant MacPhail.

action against Defendant MacPhail remains.

In the Court's previous order granting summary judgment in favor of Ms. Crane, the Court found that Ms. Crane was the sole source of the 1996 overpayment. Therefore the credit was not erroneous, and she was entitled to summary judgment as a matter of law. In making this finding, the Court found that Ms. Crane's family partnership, Stanberry Ltd., made the estimated tax payment of $490,000.00 and that Defendant MacPhail had no proprietary interest in Stanberry Ltd. nor had he contributed in any way to this estimated payment. Because Ms. Crane was the sole source of this estimated tax liability payment, she was, as a result, entitled to the 1996 overpayment in the amount of $299,536.00.

## II. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Under this standard, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir.1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Sys.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (*quoting Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)); *accord County of Oakland v. City of Berkley*, 742 F.2d 289, 297 (6th Cir.1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for what was formerly referred to as a directed verdict. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. In *Anderson*, the Court noted that:

> [T]he "genuine issue" summary judgment standard is "very close" to the "reasonable jury" directed verdict standard: "The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745, n. 11, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (*quoting* Fed.R.Civ.P. 1). In a motion for summary judgment, the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (footnote omitted); *accord Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1455–56 (6th Cir.1984), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). Any inferences to be drawn from the underlying facts contained in such materials must also be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n,* 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *Adickes,* 398 U.S. at 157–60, 90 S.Ct. 1598.

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the non-moving party fails to make a showing sufficient to establish the existence of a genuine issue of material fact as to an element essential to their case and on which they will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing par-

ty. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## III. Analysis

Plaintiff asks this Court to grant summary judgment against Defendant MacPhail based on its prior order, which found that Ms. Crane was the sole source of the 1996 overpayment. Plaintiff contends that based on this finding, Defendant MacPhail must have been erroneously refunded $299,536.00 because only one party was entitled to a refund/credit of the 1996 overpayment. (Pl.'s Reply at 1). Defendant does not dispute the finding that Ms. Crane was the sole source of the overpayment nor does he contend that he was in fact entitled to the *entire* 1996 overpayment and subsequent refund in the amount of $299,536.00. Defendant argues, however, that Plaintiff has not satisfied its burden of showing that the refund was erroneous nor the exact amount of the alleged erroneous refund. In addition, Defendant argues that where Plaintiff made a voluntary payment to him and twice affirmed that decision, it cannot say that the refund was erroneous, or the result of a mistake. Finally, Defendant MacPhail contends that there are issues of fact with regard to equitable considerations that are applicable in an erroneous refund action.

### A. Plaintiff Has Established that the Refund Was Erroneous

█ Section 7405(b) of the Internal Revenue Code provides that "[a]ny portion of a tax imposed by this title which has been erroneously refunded ... may be recovered by civil action brought in the name of the United States." 26 U.S.C. § 7405(b). The government bears the burden, in a section 7405(b) action, of establishing that the refund in question was indeed erroneous and the amount of the erroneous refund. *Soltermann v. United*

*States*, 272 F.2d 387, 387 (9th Cir.1959); *United States v. Claycraft Co.*, 364 F.Supp. 1358, 1361 (S.D.Ohio 1972). Although the term "erroneous refund" is not defined by statute, section 7405(b) has been held to apply in a variety of circumstances including where the IRS makes a refund based upon an improper credit to a taxpayer's account. *E.g.*, *Rushlight Automatic Sprinkler Co. v. United States*, 294 F.2d 572, 573 (9th Cir.1961); *United States v. Guy*, No. C–2–89–1049, 1991 WL 253007, at *3 (S.D.Ohio Sept. 25, 1991); *United States v. Mooney*, 400 F.Supp. 98, 98–99 (N.D.Tex.1975). In this case, the erroneous refund was made because the 1996 overpayment was credited to Defendant MacPhail's 1997 tax return. Because this Court previously found that Ms. Crane was the sole source of that overpayment, and therefore entitled to the subsequent credit of $299,536.00, Plaintiff contends that the refund in the amount of $299,536.00 was erroneous. (Pl.'s Mem. in Support at 1–2).

On June 2, 2003, this Court found that Ms. Crane was the sole source of the overpayment, and consequently she was entitled to a credit for the entire amount of the 1996 overpayment. (*See* Order at 8, 10, 12). Overpayments by married spouses are apportionable to each spouse to the extent that he or she contributed to the overpayment. *Hathaway v. United States*, 93–1 USTC ¶ 50,285, 1993 WL 207532 (W.D.Wash.1993); *United States v. Elam*, 112 F.3d 1036, 1038 (9th Cir.1997); 26 U.S.C. § 6402. As this Court previously found, "the entire 1996 overpayment was created by the $490,000.00 payment made by the Stanbery partnership on April 15, 1997, which was solely attributable to Crane." (Order at 8). The Court further found that "MacPhail did not contribute at all to that check, nor did he own or control any interest in the Stanbery partnership to which the funds for that check could be attributed." (Order at 9).

Based on these facts, this Court found that Ms. Crane was the sole source of the overpayment, and therefore, the credit to Ms. Crane of the entire overpayment in the amount of $299,536.00 was not erroneous. (Order at 12).

The facts in the record have not changed since this Court's order of June 2, 2003. Applying the appropriate standard—overpayments by spouses are apportionable to the extent the spouse contributed to the overpayment—to these facts, the Court finds that Defendant MacPhail did not contribute to the overpayment, and therefore he was not entitled to any refund based upon a credit of this overpayment. Therefore, the entire refund in the amount of $299,536.00, which was a result of applying the 1996 overpayment to Defendant Mac-Phail's 1997 return, was erroneous. Accordingly, the Court finds that Plaintiff has established both that the refund to Defendant MacPhail was erroneous and that the amount of the erroneous refund was $299,536.00. The Court will now consider Defendant MacPhail's arguments regarding the voluntariness of the payment and the equitable considerations applicable to an erroneous refund action.

### B. Voluntariness of Erroneous Payment is No Defense

Defendant MacPhail argues that "[w]hen the Government makes a payment voluntarily, it does not have a viable erroneous refund claim." (Def.'s Resp. at 7). This argument, however, has no basis in law. The case Defendant MacPhail cites as support for this proposition pre-dates the erroneous refund action statute, 26 U.S.C. § 7405(b), upon which this action is based, and therefore has limited, if any, applicability to the case at hand. In *United States v. Detroit Steel Products, Co.*, 20 F.2d 675 (E.D.Mich.1927), the case cited by Defendant MacPhail, the court refused

to allow the government to recover a refund payment because Congress had delegated to the Commissioner the discretion to refund any taxes erroneously assessed or collected and exercises of such discretion were not subject to review, except where "impeached for fraud or mistake." *Id.* at 677. As such, this case has no bearing on whether the government can initiate an erroneous refund action under 26 U.S.C. § 7405(b), which was enacted subsequent to that decision. As discussed above, an erroneous refund includes an improper credit to a taxpayer's account which results in a refund. The fact that an erroneous refund was voluntarily made, as the result of a mistake, is no defense to an erroneous refund action under 26 U.S.C. § 7405(b).

## C. No Equitable Considerations Preclude Plaintiff's Action

■■■ An erroneous refund action is subject to equitable considerations. *United States v. Russell Mfg. Co.*, 349 F.2d 13, 16 (2d Cir.1965). In fact, the premise behind an erroneous refund is that the taxpayer is unjustly enriched at the expense of the government and other taxpayers. *See United States v. Cyprus Amax Minerals Co.*, 965 F.Supp. 287, 289 (D.Conn.1997). As such, the government must show that the taxpayer has money "it ought not to retain." *United States v. Russell Mfg. Co.*, 349 F.2d at 16. Usually, once the government proves that a refund is erroneous, this is sufficient to demonstrate that the taxpayer has money that it ought not to retain and that the government is entitled to recover. *Cyprus Amax Minerals Co.*, 965 F.Supp. at 289; *see also United States v. Bell*, 818 F.Supp. 444, 449 (D.Mass. 1993). However, where the taxpayer has so changed his position that recovery would be unjust, a court may refuse to allow the government to recover the refund. *Russell Mfg. Co.*, 349 F.2d at 16. The fact that a taxpayer has spent the

money is insufficient to preclude recovery by the government; rather the circumstances must be such that it would be unfair and unjust to allow recovery. *United States v. Reagan*, 651 F.Supp. 387, 389 (D.Mass.1987); *see also Russell Mfg. Co.*, 349 F.2d at 16.

■■■ Defendant MacPhail cites one such case, *United States v. Bell*, in support of his argument that equitable considerations must be considered and that these considerations present questions of fact that preclude summary judgment in his case. *United States v. Bell*, however, does not support Defendant MacPhail's position because it was limited to the "singularly peculiar circumstances" of that case. *See id.* at 449–451 (emphasizing the unique and special circumstances of this case). In *United States v. Bell*, the taxpayer made an estimated tax liability payment under threat of physical harm from her husband. Later, after the couple separated, she prepared her tax return with the aid of an IRS employee who advised her that she could claim that entire payment as a tax credit on her return. Although apparently the IRS erred in crediting her with the *entire* payment, the court refused to allow the IRS to recover the money because of the unusual circumstances of that case. No such circumstances exist in this case. The facts in the record undisputedly show that Defendant MacPhail received the refund, admittedly without requesting such refund, and that it was error for him to receive the refund; there exist no other facts to indicate that it would be unjust to require him to return the refund. Under these circumstances, the government has satisfied its burden with respect to the applicable equitable considerations by showing that the refund was erroneous. *See Cyprus Amax Minerals Co.*, 965 F.Supp. at 289; *United States v. Bell*, 818 F.Supp. at 449.

### IV. Conclusion

For the reasons stated above, the Court hereby **GRANTS** Plaintiff's Motion for Summary Judgment and **JUDGMENT** is hereby **ENTERED** in its favor for $299,536.00, plus statutory interest from the date of payment as provided for under 26 U.S.C. § 6602.

**IT IS SO ORDERED.**